[Cite as *N. Olmstead v. Rock*, 2013-Ohio-3152.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99333

---

## CITY OF NORTH OLMSTED

PLAINTIFF-APPELLEE

vs.

## KIM M. ROCK

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Rocky River Municipal Court
Case No. 12 CRB 2093

**BEFORE:** S. Gallagher, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** July 18, 2013

**ATTORNEY FOR APPELLANT**

Michael R. Blumenthal
Waxman, Blumenthal L.L.C.
28601 Chagrin Blvd.
Suite 500
Cleveland, OH   44122


**ATTORNEYS FOR APPELLEE**

Michael Gareau, Jr.
Director of Law
By:    Bryan O'Malley
Assistant Director of Law
City of North Olmsted
5200 Dover Center Road
North Olmsted, OH    44070

SEAN C. GALLAGHER, J.:

**{¶1}** This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1. Appellant Kim M. Rock appeals the judgment of the Rocky River Municipal Court that found her guilty of two building code violations. For the reasons stated herein, we affirm.

**{¶2}** On August 16, 2012, a complaint was filed against Rock that charged her with violating North Olmsted Codified Ordinances ("NOCO") Sections 1135.02(e) (animal shelter violation) and 1363.07(b)(1)(G)(3) (fencing violation). On September 11, 2012, Rock entered a plea of no contest.

**{¶3}** At a pretrial held on September 26, 2012, Rock signed a time waiver for trial and a trial date was set for November 2, 2012. On October 31, 2012, Rock filed a motion for continuance that was granted by the trial court. Ultimately, the matter proceeded to trial on November 19, 2012. The court found Rock guilty of the charges, imposed a fine of $250 on each of the two counts, and ordered her to pay court costs. Rock filed a timely notice of appeal. Her motion to stay payment of fines and costs pending appeal was granted.

**{¶4}** On appeal, Rock raises three assignments of error for our review. Her first assignment of error provides as follows:

> I. The trial court erred in charging appellant with a violation of [NOCO] 1135.02(e), removal of dog house (pig shelter within 200 feet of adjacent building) as appellant falls under the grandfather clause.

{¶5} The complaint alleged that on her residential property in North Olmsted, Rock "did construct, install and/or otherwise maintain an animal shelter within 200 feet of a neighboring dwelling unit and did fail to abate said violation * * * in violation of [NOCO] Section 1135.02(e)[.]"  NOCO Section 1135.02(e) allows for animal shelters, subject to the following requirements:

> *Animal Shelter.*  Accessory buildings designed, built, altered or used to house domestic fowl or animals provided that it is located so that no part of the same shall be within ten feet of any rear or side line of the lot on within the same is located and within 200 feet of a dwelling on any adjacent lot within 200 feet of the source of any private water supply or any street line. Shelters for dogs shall not be subject to the foregoing requirements as to location except that the same shall be confined to the rear yard.

{¶6} With respect to this count, evidence was presented that along with her dogs, Rock was keeping a pot belly pig in an animal shelter on her property and that it was located within 200 feet of a neighboring dwelling unit.  Photographs in the record show the pig utilizing the animal shelter on Rock's property.  Jim McGaughey, the property maintenance inspector for the city of North Olmsted, testified that he photographed the pig using the animal shelter.  Rock received a first and a second notice of violation, but failed to comply.  At trial, Rock conceded that the pig used the animal shelter, but indicated that her five dogs also utilize it.  She maintains that the shelter is a "dog house" that the pig also uses.  We must recognize that it is the pig's use of the shelter that created the violation.  "All animals are equal, but some animals are more equal than others."  George Orwell, *Animal Farm,* Ch. 10 (1945).

**{¶7}** Nevertheless, Rock argues that her use of the animal shelter for the pig predated the promulgation of NOCO Section 1135.02(e) and is permitted under the grandfather clause. She testified at trial that the dog house has been on her property for 25 years and that the pig has been there for 25 years. The pig was raised as an indoor/outdoor family pet. Rock further claims that moving the dog house and erecting additional fencing would be cost prohibitive.

**{¶8}** The city of North Olmsted ("the City") argues that Rock failed to present any evidence to substantiate her claim under the grandfather clause. The City further claims that the 1954 zoning code prohibited the use of animal shelters within 200 feet of any human habitation and that such use has been prohibited since at least November 1, 1954. A review of the 1954 zoning code reflects that such use was prohibited under Article V, Section 5.5.

**{¶9}** Upon our review, we find that Rock failed to establish a pre-existing nonconforming use to which the grandfather clause may be applied. Accordingly, we reject this assignment of error because it is not supported by the record and the use of the animal shelter for the pig did not predate the prohibition contained in the City's zoning code.

**{¶10}** While we recognize that the pig has been utilizing the animal shelter without issue for many years and is considered a family pet by Rock, the use of the animal shelter was not in compliance with the City's zoning code. Therefore, the trial court did not err in charging appellant with a violation of NOCO Section 1135.02(e).

**{¶11}** Rock's second assignment of error provides as follows:

II. The trial court erred in charging appellant with a violation of [NOCO] 1369.02 chain link fence repair, replacement or removal. Should the Code be ruled void for vagueness?

**{¶12}** The complaint alleged that on her residential property in North Olmsted, Rock "did fail to maintain the exterior of the premises in good repair, specifically failure to repair or replace deteriorating or disintegrating fencing, and otherwise failed to comply with the Notice of Violation dated October 31, 2011, all in violation of Section 1363.07(b)(1) G. 3. of [NOCO] * * *." NOCO Section 163.07(b)(1)(G)(3) provides as follows:

(G) General maintenance. The exterior of every structure or accessory structure, including fences, shall be maintained in good repair as set forth herein.

(3) Any dwelling or appurtenant structure whose exterior surface is bare, deteriorating, ramshackled, tumbledown, decaying, disintegrating or in poor repair, shall be repaired or razed. All buckled, rotted or decayed or deteriorated walls, doors, windows, porches, floors, steps, ceilings, posts, sills, trim and their missing members shall be repaired and put in good condition. All replacements shall match and conform to the original design or be replaced completely.

**{¶13}** The City's inspector testified that he visited Rock's property to follow up on a complaint received by the building department. He observed that the chain-link fence to the rear of the property was broken, mangled, and twisted. The condition resulted from a fallen tree. The inspector issued a notice of violation, and upon return to the property, he discovered only minor improvements. Further, despite the use of dog pen fencing, the condition remained unabated.

{¶14} Rock made efforts to alleviate the violation by attempting to straighten the poles and integrating dog pen fencing with the broken chain-link fence. She maintains that she was refused a permit to replace the fence, which would require moving the posts that are eroding along a drainage ditch. Thus, she claims that she is in a Catch-22 situation.

{¶15} Rock argues that the City's code is void for vagueness because it does not render the use of an integrated fence impermissible. She specifically references NOCO Section 1369.02, which sets forth the regulations for fence and screen wall. She further claims that the code is being arbitrarily enforced against her and that the City created the situation by denying her a permit to move the posts for new fencing.

{¶16} When a statute is challenged as void for vagueness, the court must determine whether the enactment (1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement. *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 84, citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). This determination "must be made in light of the facts presented in the given case and the nature of the enactment challenged." *Id*., citing *Hoffman Estates v. The Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). An ordinance is not void for vagueness merely because it could have been more precisely worded. *State v. Dorso*, 4 Ohio St.3d 60, 61, 446 N.E.2d 449 (1983). Also, there is a strong presumption that all

legislative enactments are constitutional. *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991).

{¶17} We find that the ordinances at issue provide sufficient notice of the proscribed requirements for fencing compliance. Further, although Rock made efforts to alleviate the violation, the "twisted, mangled," and "broken" fence was not adequately repaired through the integration of dog pen fencing. We recognize that it appears Rock was placed in a difficult situation by the City, but regrettably in the City's case, "Man serves the interests of no creature except himself." George Orwell, *Animal Farm*, Ch. 1.

{¶18} Despite our findings, we would hope that because of the unusual circumstances of this case, city officials and Rock's neighbors can reach some accommodation on the issue of the fence repair. After 25 years, the pig, who is likely not long for this world, deserves some consideration because there is no Charlotte with a web[1] on the horizon to sway the thoughts or intentions of city officials or neighbors.

{¶19} While we would hope that the City will work with Rock in reaching a resolution to her situation that does not involve an Orwellian ending, we cannot find that the circumstances rose to the level of arbitrary enforcement. Rock failed to demonstrate that her constitutionally protected freedoms have been infringed upon. Because we do not find the ordinances void for vagueness, Rock's second assignment of error is overruled.

{¶20} Rock's third assignment of error provides as follows:

---

[1] E. B. White, *Charlotte's Web* (1952).

III.  The trial court erred to the prejudice of the appellant in violating her due process rights in coercing appellant to sign a time waiver in violation of the Fifth Amendment of the U.S. Constitution and Section 16, Article I of the Ohio Constitution.

**{¶21}** Rock argues that at the time of her arraignment, the trial court judge coerced her to sign a time waiver and informed her that he was prepared to move to trial within the hour.   She states that without the benefit of discovery, she reluctantly signed the time waiver.   Because the transcript of proceedings has not been filed, we must presume regularity and the validity of the time waiver.   The record reflects the time waiver was actually signed at a subsequent pretrial.   Further, Rock asked for a continuance of trial prior to the 45 days allowed for a speedy trial.   While she complains that she had not been provided with discovery, a motion to compel discovery was never filed.   Finally, when the subject of Rock being forced to sign the waiver was raised at trial, the judge responded, "you weren't ready to go to trial, and I was — we were all ready to go."   The record does not demonstrate that any coercion was exercised by the trial court with regard to the speedy trial waiver.   Accordingly, we overrule Rock's third assignment of error.

**{¶22}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR