[Cite as *Bader v. Tepe*, 2024-Ohio-2573.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                                            |
|--------------------------|---|--------------------------------------------|
| WILLIAM J. BADER,        | : | APPEAL NO. C-230584                        |
|                          |   | TRIAL NO. 20CV-17601                       |
| Plaintiff-Appellant,     | : |                                            |
|                          |   | *O P I N I O N.*                           |
| vs.                      | : |                                            |
|                          |   |                                            |
| RACHEL MARIE TEPE,       | : |                                            |
|                          |   |                                            |
| and                      | : |                                            |
|                          |   |                                            |
| MARTIN GRIZOVIC,         | : |                                            |
|                          |   |                                            |
| Defendants-Appellees.    | : |                                            |

Civil Appeal From:   Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: July 5, 2024

*David D. Donnett*, for Plaintiff-Appellant,

*Rachel Marie Tepe* and *Martin Grizovic*, pro se.

**KINSLEY, Judge.**

{¶1}    Plaintiff-appellant William Bader appeals the judgment of the Hamilton County Municipal Court awarding damages and attorney fees to defendants-appellees Rachel Mare Tepe and Martin Grizovic ("the Tenants").  For the reasons set forth below, we affirm the judgment of the trial court.

*Factual and Procedural Background*

{¶2}    In the fall of 2020, the Tenants entered into a 12-month lease agreement with Bader to rent an apartment on Orchard View Place ("the property").  They paid Bader a $1200 security deposit to secure the lease, which began on October 1, 2020, and extended through September 30, 2021.  When the Tenants moved in, they noticed that the carpet was stained with pet urine and emitted a urine-like odor.  Accordingly, on October 8, 2020, the Tenants filed a complaint with the Hamilton County Public Health Department ("the Health Department").  On October 16, 2020, Bader served a three-day notice to vacate the premises on the Tenants for an alleged breach of the lease agreement.  He argued the Tenants had committed waste by removing the carpet from the property themselves and by damaging the wallpaper and other features of the unit in the process.  And on October 20, 2020, Bader filed a complaint for eviction.

{¶3}    On November 6, 2020, a hearing on the eviction notice was held before a magistrate.  The magistrate granted Bader restitution of the premises and continued the matter so that the Tenants could answer Bader's complaint.[1]

{¶4}    They did so on November 19, 2020, filing both an answer and counterclaim, which identified the problems with the property and alleged that Bader

---

[1] The trial court adopted the magistrate's decision on November 16, 2020.

retaliated against them without setting forth the elements of a legal claim for retaliation. The Tenants later amended their counterclaim, after obtaining an attorney, to include the elements of retaliation. On November 19, 2020, Tepe also filed a change-of-address notification form alerting the court and the parties to her new mailing address.

{¶5}   The trial court conducted a bench trial on February 6, 2023. In his opening argument, Bader explained that he was seeking $4300, in addition to retaining the Tenants' $1200 security deposit, for damages as a result of carpet removal and other repairs undertaken by the Tenants. The Tenants countered that they had actually improved the quality of the property and contended that Bader retaliated against them after they filed a complaint regarding the unsanitary condition of the property. They argued that they were only evicted because they complained about the urine-stained carpet and the very strong odor to the Health Department.

{¶6}   Tepe testified at the bench trial. She testified that the monthly rent for the property was $1200, and that the Tenants paid the October and November rent to Nancy Hendrickson, Bader's property manager. She further testified that the Tenants were evicted after living in the property for only 16 days and that Hendrickson returned the November rent payment.

{¶7}   Bader also testified. He stated that he owned the property, but that Hendrickson managed it for him. He could not recall whether the prior tenants had pets, but testified that he owned a professional steam cleaner and cleaned the carpet and wallpaper before the Tenants moved in. He further testified that after the Tenants were evicted, he performed 12 hours of repair work on the property that amounted to $4300 of damage. He also testified that the Tenants were never given permission to

remove, replace, or professionally steam clean the carpeting. He testified that Hendrickson returned the Tenants' November rent check and that the Tenants were evicted for the damage they caused to the property. He also testified that the property was re-rented to new occupants for the same price that the Tenants paid.

{¶8} Tepe then testified as a rebuttal witness for the Tenants. She admitted that the Tenants removed the carpet due to a strong, unbearable smell. She explained that, when they removed the carpet, they discovered that the floor was covered in pet feces and urine. She also testified that she informed Hendrickson that they were going to remove the carpet, and that they left the carpet in the backyard after removing it. She opined that they improved, rather than damaged the property. On cross-examination, Tepe further stated that, when the Tenants first viewed the property, Hendrickson was in the process of removing the carpet and verbally promised that she would replace the carpet before they moved in. According to Tepe, Hendrickson failed to do so.

{¶9} Tepe also described the eviction hearing. She indicated that she attempted to defend against the eviction action by explaining that Bader had evicted the Tenants in retaliation. But, according to Tepe, the magistrate refused to hear her explanation.

{¶10} The trial was continued in progress to February 23, 2022. Once the trial resumed, the next witness was Adam Lingerich, an environmental health specialist with the Health Department. Lingerich confirmed that a report had been made to the Health Department regarding unsanitary conditions at the property, and that a notice of violation had been issued.[2]

---

[2] The Health Department's report and notice of violation were entered into evidence at trial.

{¶11} Grizovic also testified. He testified that shortly after he and Tepe moved into the property, Tepe noticed a horrific smell from the carpet. Grizovic explained that Tepe contacted the Health Department and that the Health Department compiled a report and notice of violation in response to their complaint. He further testified that they called a professional carpet cleaning company, but the company determined that they could not clean the carpet. He testified that he then removed the carpet and stained the floors underneath himself. On cross-examination, Grizovic explained that Hendrickson had given the Tenants permission to make these repairs. According to Grizovic, after the Tenants were evicted, the property was listed for $200 more in monthly rent than what they paid.[3] Grizovic also testified that Hendrickson told the Tenants to move out before they were given the notice to vacate and that they agreed, but Hendrickson refused to return their security deposit. Grizovic told the court that the Tenants gave Hendrickson their forwarding address.

{¶12} Lastly, Hendrickson testified. She testified that she served as Bader's property manager and that the property was in rentable condition when it was rented to the Tenants. With regard to the carpet specifically, she observed that it was in extremely good condition and did not smell. She did not know whether the prior tenants had pets. She theorized that Tepe did not like the carpet's color, but disclaimed giving the Tenants permission to remove the carpet or wallpaper. She further testified that the property was in worse condition after the Tenants moved out. She described damage to the floor resulting from the Tenants' carpet removal and damage to the molding after the Tenants tore up the wallpaper. She relayed that she worked for 24 hours straight in order to prepare the property to be rented again.

---

[3] The property listing was entered as an exhibit and admitted into evidence.

Hendrickson also testified that she attempted to rent the property for $200 more per month because she believed that was the fair market value. According to Hendrickson, the property was ultimately rented around January 7, 2021, for the same monthly rent the Tenants paid.

{¶13} On cross-examination, Hendrickson testified that she returned the Tenants' November rent check to them and gave their security deposit to Bader. The trial court inquired of Hendrickson whether an itemization of deductions from the security deposit was ever provided to the Tenants, and Hendrickson replied that, "I believe they were. I believe that they received something from the attorney."

{¶14} On April 27, 2023, the trial court issued judgment in the case, ruling in part for Bader and in part for the Tenants. As to Bader's complaint, the trial court found that the Tenants' removal of the carpet and wallpaper constituted waste in violation of their obligations under R.C. 5321.05(A)(6). It assessed Bader's damage as $700, which included $400 for the carpet and $300 to refinish the floor and repair the wallpaper. The trial court held that Bader could not deduct this amount from the Tenants' security deposit because he failed to provide an itemization of damages within 30 days after the lease was terminated as required by R.C. 5321.16.

{¶15} As to the Tenants' counterclaim, the trial court found that Bader violated the Landlord-Tenant Act, specifically R.C. 5321.04, and committed negligence by failing to "make all repairs and to do whatever is reasonably necessary to put and keep the residence in a safe and sanitary condition." It also found that Bader breached the lease agreement by evicting the Tenants despite their payment of October rent and by failing to maintain and repair the property. The trial court also ruled in favor of the Tenants on their counterclaim for retaliation under R.C.

5321.02(A), because the Tenants were evicted eight days after they complained to the Health Department. It concluded that the Tenants were entitled to double damages under R.C. 5321.16(C).

{¶16} The trial court calculated the Tenants' damages by deducting the $700 that the Tenants owed Bader for waste from the Tenants' unreturned $1200 security deposit for a total of $500. Doubling that amount under R.C. 5321.16(C), the trial court awarded damages to the Tenants in the amount of $1000 plus costs and attorney fees, which were later determined to amount to $1500.

{¶17} Bader now appeals.

### *Analysis*

{¶18} On appeal, Bader raises three assignments of error. First, Bader argues that the trial court erred in considering the Tenants' retaliation counterclaim, because he contends it was barred by the doctrines of res judicata and collateral estoppel. Second, Bader contends that the trial court erred when it awarded the Tenants' double damages and attorney fees. Third, Bader claims that the trial court erred in awarding the Tenants' damages because he established that the damage caused by the Tenants exceeded the tenant's security deposit. We consider each argument in turn.

### *Res Judicata and Collateral Estoppel*

{¶19} In his first assignment of error, Bader argues that the doctrines of res judicata and collateral estoppel prevented the Tenants' retaliation counterclaim. Essentially, Bader argues that the Tenants waived the counterclaim by not raising it at the November 6, 2020 forcible entry and detainer hearing.

{¶20} The doctrine of res judicata encompasses two related doctrines: claim preclusion, which is also called res judicata, and issue preclusion, which is also known

as collateral estoppel. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6. Claim preclusion bars subsequent actions by the same parties based upon any claim that was raised or could have been raised arising out of a transaction that was the subject matter of a previous action. *Id.* Issue preclusion prevents relitigation of any fact that was determined by a court in a previous action between the parties, even if the causes of action differ. *Id.* at ¶ 7.

**{¶21}** With regard to eviction actions specifically, R.C. 1923.03 exempts forcible entry and detainer actions from having preclusive effect on subsequent legal actions. More specifically, R.C. 1923.03 provides that judgments under the forcible entry and detainer chapter are not a bar to a later action brought by either party. As a result, courts have held that "a forcible entry and detainer action by its very statutory construction is summary in nature and determines one point only, the right to immediate possession." *Hamdan v. Traish*, 7th Dist. Mahoning No. 14 MA 14, 2015-Ohio-4561, ¶ 39. Thus, a forcible entry and detainer action only bars relitigation of issues that were "actually and necessarily" decided in that proceeding, not issues that *could have* been raised but were not. *Id.* at ¶ 40.

**{¶22}** From the record, it appears that the November 6, 2020 forcible entry and detainer proceeding solely resolved the issue of eviction.[4] By its very terms, the magistrate's order granted Bader restitution of the property, but continued Bader's claim for waste so that the Tenants could respond to it. Moreover, Tepe testified that

---

[4] In reaching this conclusion, we note the lack of a transcript of the November 6, 2020 hearing in the record. In the absence of a transcript, we presume the regularity of the proceedings. *State v. Cross*, 1st Dist. Hamilton No. C-230179, 2024-Ohio-268, ¶ 10. In this case, that presumption results in the conclusion that the trial court merely disposed of the eviction claim at the hearing, given that its entry resolves that claim and continues all other matters. Moreover, as the party claiming a res judicata bar, Bader bears the burden of demonstrating that the retaliation issue was actually considered at the November 6, 2020 hearing. *See Alessio v. United Airlines, Inc.*, 8th Dist. Cuyahoga No. 111449, 2022-Ohio-4510, ¶ 10. In the absence of a transcript demonstrating what actually occurred at the hearing, Bader cannot meet this burden.

the magistrate refused to hear her argument as to why the Tenants had been wrongfully evicted, further compelling the conclusion that the retaliation counterclaim was not resolved at the November 6, 2020 hearing. The issue of retaliation was therefore not actually and necessarily decided at the eviction stage of the case. As a result, the doctrines of res judicata and collateral estoppel do not apply to the Tenants' retaliation counterclaim. *See* R.C. 1923.03; *Hamdan* at ¶ 39.

{¶23} Bader further asserts that the claim of retaliation is an affirmative defense that cannot be raised as a counterclaim. We have previously held, however, that a tenant is entitled to assert retaliation either as a defense in an answer or as a counterclaim. *See Kassem v. Barnes*, 1st Dist. Hamilton No. C-190539, 2020-Ohio-4046, ¶ 9. Bader's argument therefore fails.

{¶24} Because the eviction hearing was limited to the issue of possession, and the Tenant's assertion of retaliation was not actually and necessarily decided, we hold that the Tenants' counterclaim for retaliation was not barred by the doctrines of res judicata and collateral estoppel. Bader's first assignment of error is accordingly overruled.

### *Damages*

{¶25} In his second assignment of error, Bader argues that the trial court erred when it awarded the Tenants double damages and attorney fees. In his third assignment of error, Bader argues that the trial court erred in awarding the Tenants damages because he established that the damage caused by the Tenants exceeded the Tenants' security deposit. Because both assignments of error take issue with the trial court's award of damages, we address both assignments of error together.

{¶26} "The standard of review following a civil bench trial is whether the trial court's judgment is against the weight of the evidence. Under a manifest-weight-of-the-evidence standard, we determine whether the evidence on each element satisfies the burden of persuasion." (Internal citations omitted.) *Price v. Brooks,* 1st Dist. Hamilton No. C-210668, 2022-Ohio-2800, ¶ 9. "When reviewing the manifest weight of the evidence in a civil case, we must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which is by a preponderance of the evidence." *Mehta v. Johnson,* 1st Dist. Hamilton No. C-220013, 2022-Ohio-3934, ¶ 8.

*A.        Double Damages*

{¶27} Bader argues that the Tenants were not entitled to double damages under R.C. 5321.16. In *Chorpenning v. Carmack*, the Ninth Appellate District explained the requirements for a landlord to withhold a portion of a security deposit to remedy damages:

> Under R.C. 5321.16, a landlord who suffered damages after a tenant has terminated his lease may retain a portion of the security deposit necessary to remedy the damages. To retain the security deposit, or a portion thereof, the landlord must furnish a written notice to the tenant itemizing the damages and the amounts withheld, and return any remaining portion to the tenant within thirty days after termination of the rental agreement and delivery of possession. A landlord who wrongfully withholds a portion of a tenant's security deposit is liable for damages equal to twice the amount wrongfully withheld and for reasonable attorney fees. In fact, the award of double damages and

reasonable attorney fees is mandatory if a landlord wrongfully withholds a portion of a tenant's security deposit. However, the Ohio Supreme Court has held that the term wrongfully withheld means that the amount found owing from the landlord to the tenant over and above any deductions that the landlord may make.

(Internal quotation marks and citations omitted.) *Chorpenning v. Carmack*, 9th Dist. Summit No. 23933, 2008-Ohio-1224, ¶ 7.

{¶28} R.C. 5321.16 also requires a tenant to provide the landlord a forwarding address in writing. But "for equity's sake, the courts have avoided a hypertechnical application of the statute." *Jensen v. Blvd. Invests. Ltd.*, 8th Dist. Cuyahoga No. 103658, 2016-Ohio-5325, ¶ 19. To that end, "a landlord has sufficient notice of a tenant's new address where the notice is given to a third party who has acted as the landlord's agent." *Id.* at ¶ 20. For example, in *Clarke v. Royal*, 10th Dist. Franklin No. 20AP-366, 2021-Ohio-2005, ¶ 13, the court held that because the tenant's counsel had filed with the trial court and served on the landlord a written notice of appearance of counsel complete with the tenant's mailing address, the tenant had fulfilled his obligation to provide a forwarding address. Further, in *Clarke*, the tenant testified that she provided a forwarding address to her landlord. *Id.* at ¶ 14.

{¶29} In this case, Bader argues that the Tenants failed to provide him with a forwarding address and that the trial court therefore erred in awarding double damages. However, the record reflects that on November 19, 2020, three days after the magistrate's eviction order, Tepe filed a change-of-address notification form. Grizovic also testified that the Tenants provided Hendrickson with a forwarding address. Given this evidence that the Tenants did in fact provide their new address,

we cannot say that the trial court erred in granting double damages to the Tenants. *See Continental Ents., Ltd.*, 8th Dist. Cuyahoga No. 102899, 2016-Ohio-3055, at ¶ 25.

B.      *Security Deposit*

**{¶30}**  Bader also argues that he proved his damages were in excess of the security deposit and that he therefore did not wrongly withhold the security deposit. But in doing so, Bader fails to point us to any particular evidence that compels a different result than the one reached by the trial court; therefore, we cannot say that the trial court's judgment was against the manifest weight of the evidence. *Id.* In determining that Bader sustained $700 in damage to the apartment as a result of the Tenants' waste, the trial court considered Bader's testimony about the repairs he undertook, as well as Hendrickson's testimony about her work on the property.[5] "In weighing the evidence * * * we are always mindful of the presumption in favor of the trial court's factual findings." *Filby v. Stocker Dev., LLC*, 5th Dist. Tuscarawas No. 2017 AP 06 0020, 2017-Ohio-9002, ¶ 21. The trial court was in the best position to hear the witnesses' testimony and to assess their credibility. We see no reason to disturb the trial court's factual findings regarding the amount of the security deposit awarded to the Tenants.

C.      *Attorney Fees*

**{¶31}**  Bader also challenges the trial court's decision granting the Tenants' attorney fees. "The amount of an attorney fee award is a matter within the trial court's sound discretion. An appellate court will not reverse a determination of attorney fees unless the appellant demonstrates an abuse of discretion [so] that the amount of fees

---

[5] The Tenants did not cross-appeal the trial court's decision to deduct $700 in waste from the $1200 security deposit despite the absence of an itemized statement of damage. We therefore do not address whether the trial court's decision to withhold a damage amount from the security deposit absent timely itemization comports with R.C. 5321.16.

determined is so high or so low as to shock the conscience." (Internal citations and quotation marks omitted.) *Clarke*, 10th Dist. Franklin No. 20AP-366, 2021-Ohio-2005, at ¶ 17. But "[t]his court and others have determined that a tenant may recover reasonable attorney fees under R.C. 5321.16(C) attributable to both the security deposit claim and to defending against a landlord's claim for alleged damages when the two claims are virtually indivisible." (Internal quotation marks omitted.) *Id*. at ¶ 18.

**{¶32}** Bader does not challenge the reasonableness of the attorney fees, but only takes issue with the fact that they were awarded. His argument is derivative of his contention that the Tenants did not provide a forwarding address. In essence, Bader contends that the evidence presented at trial does not support the trial court's conclusion that the Tenants timely submitted their new address. For the same reasons that we rejected this argument in the context of double damages, we also reject it here.

**{¶33}** We therefore overrule Bader's second and third assignments of error.

### Conclusion

**{¶34}** For the reasons set forth in this opinion, we overrule Bader's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.