OPINION
{¶ 1} Defendants-appellants, Steve and Lisa Hurst, and Hurst Marketing Group, Inc. ("Hurst Marketing"), defaulted on a commercial lease with plaintiffs-appellees, Philip and Marjorie Yoder, and the Yoders filed suit to enforce their rights under the lease. The matter was heard by a magistrate in the trial court, who recommended judgment for the Yoders on all claims. The trial court adopted the magistrate's decision, entered judgment *Page 2 
for the Yoders in the amount of $36,545.56, plus interest, and $18,812 for attorneys' fees.
The Hursts now appeal from that judgment, raising four assignments of error:
 ASSIGNMENT OF ERROR NO. 1: The trial court abused its discretion in adopting the Magistrate's Decision.
 ASSIGNMENT OF ERROR NO. 2: The trial court Abused its Discretion by awarding Appellee Reasonable Attorneys Fees where Appellee did not meet its burden of proof that the attorney's fees were reasonable.
 ASSIGNMENT OF ERROR NO. 3: The trial court Erred in Denying Appellants' Motion for Judgment.
 ASSIGNMENT OF ERROR NO. 4: The trial court abused its discretion by excluding evidence which was admissible at the trial in this matter.
 {¶ 2} At issue is whether the Yoders waived their right to enforce the lease by refusing to accept the Hursts' lump-sum settlement offer upon their default. We hold that they did not, because the lease was valid and enforceable, and the Yoders had no duty to accept less than the amount agreed upon in the lease. We find no evidence that the trial court abused its discretion, and we therefore affirm the judgment of the trial court.
 {¶ 3} The civil rules vest trial courts with broad discretion concerning magisterial procedures. See, e.g., Civ.R. 53(D)(4)(b). After properly referring a matter to a magistrate, the court has the option to adopt, reject, or modify a magistrate's decision, hear additional evidence, recommit the matter with instructions, or hear the matter. Id.DeSantis v. Soller (1990), 70 Ohio App.3d 226, 232. On appeal, we review the record of the trial court for an abuse of discretion. Marchel v.Marchel, 160 Ohio App.3d 240, 2005-Ohio-1499, at ¶ 7. An abuse of discretion is more than an error of law or judgment; *Page 3 
rather, it implies an attitude that is arbitrary, unreasonable, or unconscionable. George v. Ohio Dept. of Human Serv. (2001),145 Ohio App.3d 681, 686.
 {¶ 4} In their first assignment of error, the Hursts argue that the trial court abused its discretion in adopting the magistrate's decision. We disagree. The trial court referred this matter to a magistrate for a bench trial. The relevant portions of the magistrate's findings of fact and conclusions of law follow.
 {¶ 5} On October 2, 2000, Steve T. Hurst, for Hurst Marketing Group, Inc., entered into a commercial lease with Philip and Marjorie Yoder. The property leased was a 2,700 square-foot portion of a building located at 294 East Long Street, in Columbus, Ohio. The lease term was 36 months, beginning November 1, 2000. Rent was fixed at $72,000, payable in monthly installments of $2,000. In connection with the lease, Steve Hurst, and his wife Lisa V. Hurst, also executed a personal guaranty of the lease obligations. The terms of the guaranty stated that the Hursts were personally liable on the lease for its duration. The terms, however, also provided that the guaranty could dissolve after 24 months, but only if the Hursts complied with all of the lease obligations, which included making on-time rental payments. The magistrate concluded that the lease and personal guaranty were valid and enforceable. (Magistrate's Decision, June 8, 2005.)
 {¶ 6} In Ohio, a contract is an agreement between two or more parties to do (or not to do) a particular thing, and the agreement must be supported by consideration. See, e.g., Powell v. Grant Med. Ctr,148 Ohio App.3d 1, 10, 2002-Ohio-443, at ¶ 27. Here, the Yoders agreed to lease commercial space to Hurst Marketing, and Hurst *Page 4 
agreed to pay. Thus, there is a valid contract, and the magistrate's determination was on point.
 {¶ 7} The Hursts took possession of the property in October 2000, began operating their business, and fully complied with the lease obligations until March 2002, when the Hursts purportedly sold Hurst Marketing to another company. After that, Steve Hurst vacated the premises to go to work for the acquiring company. Lisa Hurst remained on the premises for a brief time thereafter, and the Hursts continued to pay rent until June 2002. In July, Lisa Hurst vacated the premises, and the Hursts sent only a partial rent payment to the Yoders. They paid no rent in August.
 {¶ 8} On August 1, 2002, Philip Yoder sent the Hursts a notice of default. At that time, there were roughly 18 months remaining on the lease, and $36,000 in outstanding rent. On August 27, 2002, Lisa Hurst sent the Yoders an email, which offered to settle the unpaid rent for a lump sum in two payments of $3,500 and $4,000 respectively. Mr. Yoder rejected the offer, but made a counter-offer. About two months later, Steve Hurst sent the Yoders a follow-up email, restating his wife's previous offer, which the Yoders again rejected.
 {¶ 9} In January and again in July 2003, Mr. Yoder sent two more letters demanding payment from the Hursts. They did not respond to the first letter, but eventually responded to the second. In a letter dated July 15, 2003, Steve Hurst sent the Yoders a letter restating the initial settlement offer (the same one the Yoders had already twice rejected). In that letter, Mr. Hurst also alleged, apparently for the very first time, that Hurst Marketing had vacated the premises because of poor security. *Page 5 
 {¶ 10} By October 2003, the Hursts had been in default for over a year, and the parties had failed to reach an agreement. The Yoders brought suit against the Hursts and Hurst Marketing for breach of contract. The Hursts counter-sued, alleging fraud, negligent misrepresentation, unjust enrichment, and also for breach of contract. They argued that Hurst Marketing should not be liable for the balance on the lease because the Yoders had failed to disclose the fact that the property was in a neighborhood with security challenges, and that they should not be personally liable because their settlement offer satisfied the condition precedent to extinguish the guaranty. The Hursts also argued that the Yoders' refusal to settle constituted waiver, and that the Yoders were barred from enforcing the terms of the lease. These arguments fail.
 {¶ 11} First, the magistrate properly rejected the argument that the Hursts' vacated the property because of safety concerns. Indeed, the property was in an urban neighborhood on Columbus' near-eastside, with a homeless shelter located on the same block. The Hursts had visual notice of the neighborhood's "status" at the time they entered into the lease. A Hurst employee actually testified to his poor first impression of the neighborhood when he went there for the first time. Testimony of David W. Yutzy:
 Well, the obvious thing [was] the location, the [homeless shelter] and the various people who go to those types of things. But other than that, you know, just some of the debris and things like that around the outside, but nothing that struck me as odd as being downtown.
(Tr. 247.)
 {¶ 12} Mr. Yoder also testified that he informed the Hursts about the security concerns. (Tr. 75.) The Hursts objected to the magistrate's finding on grounds that *Page 6 
Mr. Yoder's testimony was vague — that he could not recall the specific conversation he had with the Hursts:
 [COUNSEL:] It's your testimony that you told the Hursts there had been prior break-ins during that meeting?
 [MR. YODER:] Break-ins to parked cars in the neighborhood, I'm sure I would have mentioned. Not necessarily on our property, but in the neighborhood.
(Tr. 75.)
 {¶ 13} Regardless of Mr. Yoder's testimony, it was clear that poor security had nothing to do with the Hursts' default. First of all, the Hursts failed to cite this reason until six months after defaulting. In addition, the neighborhood's benefits and challenges were obvious to anyone who had visited 294 East Long Street. The Hursts knew this, and they leased the property — and at a bargain price of less than $1 per foot. The magistrate's finding, thus, is a reasonable and logical inference based on the evidence.
 {¶ 14} Second, the magistrate properly rejected the Hursts' arguments concerning the settlement offer. Both arguments are fundamentally flawed. "Waiver" is defined as the voluntary relinquishment of a known legal right. Glidden Co. v. Lumbermens Mut. Cas. Co.,112 Ohio St.3d 470, 2006-Ohio-6553, at ¶ 49. The Hursts were bound by the lease terms, and by the guaranty, and the Yoders were not required to settle for less. To say that a party waives the right to enforce a contract when he or she refuses to release the breaching party from a pre-existing obligation runs afoul of virtually every legal and equitable principle in contract law. See, e.g., Restatement of the Law 2d, Contracts (1981) Section 73 (explaining the pre-existing legal duty rule). *Page 7 
 {¶ 15} The Hursts also contend that their settlement offer sufficiently satisfied the condition precedent to eradicate the guaranty, which, by its terms, was to dissolve after the Hursts made 24 on-time rental payments. The settlement offer, however, was nothing but a unilateral attempt to renegotiate the terms of the guaranty. The terms of the guaranty were fairly simple: Make 24 on-time rent payments, and the guaranty goes away — not, make 18 payments, default, and try to make a new deal. Moreover, the Hursts never actually paid the Yoders. Offering to pay is not the same as actually paying. Talty v. Freedman'sSav. Trust Co. (1876), 93 U.S. 321, 325. Had the Hursts actually tendered a lump sum settlement to the Yoders — and the Yoders had accepted — there might be some teeth to the waiver argument. Those are not the facts here.
 {¶ 16} Thus, the magistrate's decision was supported by the evidence, and the trial court did not abuse its discretion by adopting the decision and awarding judgment for the Yoders in the amount of $36,545.56. We, therefore, overrule the first assignment of error.
 {¶ 17} Turning to the second assignment of error, the Hursts allege that the trial court abused its discretion by awarding unreasonable attorneys' fees. We disagree.
 {¶ 18} After adopting the magistrate's decision on the merits, the trial court referred the matter back to the magistrate for a hearing on damages, pre-judgment interest and attorneys' fees. (Magistrate's Decision, October 25, 2006, 1.) The Hursts objected to the supplemental hearing on grounds that it would give the Yoders another opportunity to prove the reasonableness of their attorneys' fees. Indeed, the Yoders had not proven the reasonableness of their attorneys' fees at trial. As counsel for the Hursts contends, the only evidence of whether the fees were reasonable was the testimony of Philip Yoder himself, who was obviously not an expert on attorneys' fees. (Appellants' Brief, at 24; Tr. *Page 8 
34.) But the trial court's decision to order another hearing was properly exercised under Civ.R. 53(D)(4)(b), which authorizes the court to take a number of actions after reviewing a magistrate's decision, including recommitting the matter to the magistrate with instructions. Therefore, the trial court did not abuse its discretion in ordering the second hearing.
 {¶ 19} Just before the damages hearing, the parties stipulated to the Yoders' legal fees. They attached invoices to the stipulation, as Exhibit A, and expressly preserved three issues for review on appeal: (1) that any award of attorneys' fees to the Yoders was improper because they failed to provide sufficient evidence to support the award; (2) that the Yoders were not entitled to attorneys' fees related to the defense of the Hursts' counterclaims; and (3) that it was improper for the court to schedule a second hearing for the Yoders to prove their attorneys' fees. Strangely, the reasonableness of the fees themselves — i.e., the calculation of hours and the hourly rate charged — is not contemplated in the stipulation as either reasonable or unreasonable.
 {¶ 20} Section 26.01 of the lease agreement provides that if either party chooses to litigate its rights under the lease, "the prevailing party shall be entitled to all of its costs plus reasonable attorney fees to be fixed by the court." This is standard "boilerplate" language. Since, in our legal system, litigants historically bear the cost of their own legal expenses, regardless of who prevails, it is not unreasonable for parties to a contract to agree otherwise in the event of a breach.
 {¶ 21} The crux of the Hursts' argument is that the Yoders failed to "prove" their attorneys' fees. (Appellants' Brief, at 24.) They claim that the only evidence of whether the fees were reasonable was the testimony of Mr. Yoder himself. But the trial court has *Page 9 
broad discretion in determining the reasonableness of attorneys' fees. See e.g., Dehoff v. Veterinary Hosp. Operations of Cent. Ohio,Inc., Franklin App. No. 02AP-454, 2003-Ohio-3334 (citing Bittner v.Tri-County Toyota, Inc. [1991], 58 Ohio St.3d 143, 146). The procedure for determining an appropriate award involves calculating the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate. Ibid. A trial court's award of attorneys' fees should not be reversed on appeal absent an abuse of discretion. Dehoff, at ¶ 145.
 {¶ 22} Counsel for the Hursts also contends that the award is governed by DR 2-106(B) which was previously in effect. (Appellant's Brief, at 23-24.) Rule 1.5 of the Ohio Rules of Professional Conduct is the relevant superseding regulation, however, the gist of rule 1.5 simply states that an attorney's fee must be reasonable. Thus, rule 1.5 is not dispositive. Further, the Code of Professional Responsibility governed attorney ethics, not the law to be applied to determine the terms of a contract and the result of a breach.
 {¶ 23} Having determined that the Yoders were the prevailing party, the magistrate found that the Yoders were entitled to attorneys' fees according to lease provision 26.01. This disposes of the first stipulation. The magistrate also determined that 26.01 does not distinguish between a party asserting a claim and one defending against a claim (or counterclaim), and that the Yoders were therefore entitled to all reasonable attorneys' fees incurred. (Magistrate's Decision, at 5.) This disposes of the second stipulation. As to the third stipulation, we have already said that the trial court did not abuse its discretion by ordering a second hearing.
 {¶ 24} The Yoders' counsel believed that the parties' stipulation encompassed the fact that the attorneys' fees in Exhibit A were reasonable. The Hursts disagreed, *Page 10 
contending that the stipulation only reached the issue of the quantity of hours worked, not that the hourly rate was reasonable. Insofar as the Hursts are concerned, we believe that the stipulation was merely a blanket denial to paying any attorneys' fees to the Yoders. The hourly rate at issue was $250, which is certainly reasonable for experienced counsel handling a commercial litigation matter. Ironically, if the Yoders were required to present an additional witness to give independent expert testimony as to attorneys' fees, they would have incurred more fees in doing so. Those fees would have been passed on to the Hursts.
 {¶ 25} In sum, $250 per hour is a reasonable rate, and there is no evidence to support a finding that the trial court abused its discretion in awarding attorneys' fees. The second assignment of error is overruled.
 {¶ 26} The third assignment of error states that the trial court erred in denying the Hursts' motion for judgment as to the Yoders' breach of contract claim.
 {¶ 27} Under Ohio law, the elements of breach of contract are: (1) existence of a valid contract; (2) performance by the plaintiff; (3) non-performance by the defendant; and (4) damages resulting from the defendant's breach. See, e.g., Powell, at ¶ 27. Here, the Hursts argued that the Yoders failed to prove that they performed under the contract. (Tr. 60.)
 {¶ 28} During the Yoders' case-in-chief, Mr. Yoder testified that he leased the space to the Hursts, they used the space, and the Hursts paid monthly rent until they defaulted in August 2002. (Tr. 28, 30, 31.) Also, Mr. Yoder testified that, despite reasonable efforts, he had been unable to re-let the space. (Tr. 32.) This testimony was sufficient to prove the elements of the claim, at least insofar as a motion for judgment is *Page 11 
concerned. Instead of granting judgment, however, the magistrate allowed plaintiffs' counsel to reopen their case-in-chief, to ask one additional question:
 [PLAINTIFF'S COUNSEL:] Mr. Yoder, * * * have you substantially complied with your obligations as [a] landlord pursuant to the terms of that lease?
 [MR. YODER:] Yes.
 [COUNSEL:] No further questions. And I now rest.
 THE COURT: Cross-examination on that issue?
 [DEFENSE COUNSEL:] Not at this time.
 [PLAINTIFF'S COUNSEL:] I re-rest.
(Tr. 66.)
 {¶ 29} Obviously, the preferred course is for the Yoders to prove their case during the initial presentation of their case-in-chief. But we cannot find an abuse of discretion in permitting the asking of an additional question to make the record crystal clear, especially given the fact that the property had been available to the Hursts, and that they did in fact occupy the property for roughly half of the lease term. For these reasons, the third assignment of error is overruled.
 {¶ 30} In the fourth and final assignment of error, the Hursts allege that the trial court abused its discretion by excluding admissible evidence, namely the testimony of David Yutzy, who was an employee and part-owner of Hurst Marketing. We review the trial court's exclusion of evidence for abuse of discretion. See, e.g., State v. Mardis (1999),134 Ohio App.3d 6, 20.
 {¶ 31} On direct examination, counsel questioned Mr. Yutzy about a variety of circumstances regarding the property, but also attempted to elicit hearsay statements *Page 12 
allegedly made in conversations between Messrs. Yoder and Hurst. The Hursts' counsel contended that the statements were admissible as party-opponent admissions. See Evid.R. 801(D)(2). Although it is true that relevant party-opponent admissions are admissible non-hearsay, Mr. Yutzy's testimony was inadmissible because he did not actually hear the statements about which he intended to testify. (Tr. 253, 254.) This has nothing to do with the hearsay rule; rather, it goes to the witness' competence. See Evid.R. 602. Generally, a witness may not testify concerning subject matter about which he or she has no personal knowledge. See id. Thus, the excluded testimony was inadmissible because Mr. Yutzy did not actually hear the conversation about which he intended to testify, which had nothing to do with whether the evidence was admissible non-hearsay.
 {¶ 32} The real issue concerning the excluded testimony was hearsay within hearsay (also called "double hearsay"). See Evid.R. 805; McCormick, Evidence (6 Ed.2006) Section 324.1. Although hearsay within hearsay is sometimes admissible, it is only so "if each part of the combined statements conforms with an exception to the hearsay rule." Applying Evid.R. 805 here, Mr. Yutzy was trying to testify about statements allegedly made by Philip Yoder, but as related to him by Mr. Hurst. Mr. Hurst may testify to the statements because they qualify as party-opponent admissions. But in order for Mr. Yutzy to be allowed to testify to them, the conversation(s) between Messrs. Yutzy and Hurst must also qualify for an independent hearsay exception. Since Messrs. Yutzy and Hurst are not adverse, they are not party opponents, and Evid.R. 801(D)(2) does not apply. Thus, there is no independent hearsay exception, and the *Page 13 
magistrate properly excluded the testimony. Again, there is no evidence that the trial court abused its discretion. The fourth assignment of error is overruled.
 {¶ 33} Having overruled all four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 DESHLER, J., concurs. SADLER, P.J., concurs separately. DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.