[Cite as *Clarke v. Royal*, 2021-Ohio-2005.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Clarke, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 20AP-366 |
| v. | : | (M.C. No. 2017 CVG 015011) |
| Kate Royal et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 15, 2021

**On brief:** *Law Office of Brian M. Garvine, LLC,* and *Brian M. Garvine,* for appellant. **Argued:** *Brian M. Garvine.*

APPEAL from the Franklin County Municipal Court

NELSON, J.

{¶ 1} Defendants-appellees Kate Royal and her husband Myrthil Richardson (together, "Ms. Royal") tendered a monthly rent check to their landlord, plaintiff-appellant John Clarke, on May 5 (the last day of the month by which they could avoid a late payment penalty under the terms of the lease), but he refused to cash it. Instead, Mr. Clarke (who was marketing the house for sale) filed suit on May 8, 2017 to eject them, and for damages. They left the home later that month, and on June 6, 2017 the parties agreed in court that possession of the property would rest fully with Mr. Clarke as of that date, and that Mr. Clarke would dismiss his first, ejectment claim. Mr. Clarke never returned their $950 security deposit, so Ms. Royal counterclaimed on August 11, 2017 under the security deposit provisions of R.C. 5321.16. After a trial, the municipal court found against Mr. Clarke on his damages claim (among other things, he was seeking rent all the way through September 2017 as well as other fees for a total of $12,112.56, *see* November 8, 2018 Tr. at 61). January 7, 2019 Decision and Entry at 3 (finding that Mr. Clarke had terminated the lease

in May 2017). The trial court found for Ms. Royal on her counterclaim, saying that she was entitled to double the security deposit pursuant to statute, plus a refund of $200 she had paid under protest on an unproven (and withdrawn) claim of past-due utilities, plus attorney fees to be determined at a later date. *Id.* at 3-4 (noting that Mr. Clarke had failed to return the security deposit or to provide any itemized list of damages that might justify withholding).

{¶ 2} Mr. Clarke attempted a premature appeal, but after we returned the case to the trial court, *see* April 2, 2019 Journal Entry of Dismissal, that court conducted a fees hearing, considered further fees evidence, and rendered a final judgment for Ms. Royal in the amount of $2,100 (double the $950 security deposit, plus the $200) plus $5,415 in attorney fees. June 26, 2020 Judgment Entry. Mr. Clarke does not contest the judgment against his damages claim, but appeals to us from the judgment on the counterclaim.

{¶ 3} He presents two assignments of error:

> [1.] The trial court erred when it ruled appellees were entitled to their security deposit plus [sic] double damages and attorney fees when appellees did not comply with R.C. 5321.16.

> [2.] The trial court erred when it granted appellees attorney fees when appellees failed to prove the reasonableness of their attorney fees.

Appellant's Brief at 3 (capitalizations adjusted).

{¶ 4} Neither assignment holds water. The trial court was entitled to find the facts that it did, and the statute in those circumstances provides for damages of double the amount wrongfully withheld plus attorney fees (which the trial court did not abuse its discretion in assessing).

{¶ 5} Mr. Clarke's first assignment of error—urging that Ms. Royal was entitled neither to return of her security deposit nor to that amount again in statutory damages, plus attorney fees—does not dispute the trial court's premise that the deposit was wrongfully withheld. Rather, Mr. Clarke appears to assert that the trial court erred as factfinder in concluding that Ms. Royal had met a statutory precondition to the deposit's return. Appellant's Brief at 9-10.

{¶ 6} R.C. 5321.16 (relating to security deposit procedures) "is part of the Ohio Landlord-Tenant Act, which 'codifies the law of this state regarding rental agreements for

residential premises, and governs the rights and duties of both landlords and tenants.' " *Timoneri v. NorthSteppe Realty, Inc.*, 10th Dist. No. 15AP-618, 2016-Ohio-5901, ¶ 17, quoting *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 26 (1985). Among other things, that statute provides that any "amount due" of a security deposit after any appropriate itemized deductions "shall be * * * delivered to the tenant * * * within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding address or new address to which the * * * amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorneys fees under division (C) of this section." R.C. 5321.16(B). Division (C) then provides: "If the landlord fails to comply with division (B) * * *, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees." R.C. 5321.16(C).

{¶ 7}   As we have explained, "R.C. 5321.16(C) imposes a penalty on noncomplying landlords who wrongfully withhold any or all of the security deposit from the tenant. *Smith v. Padgett*, 32 Ohio St.3d 344, 349 (1987). Such a landlord 'is liable for damages equal to twice the amount wrongfully withheld and for reasonable attorney fees.' *Id.* at paragraph three of the syllabus. However, a landlord is * * * liable for damages and reasonable attorney fees [only] if the tenant provides it with a forwarding or new address. R.C. 5321.16(B)." *Timoneri* at ¶ 19.

{¶ 8}   Here, Mr. Clarke takes issue with the trial court's finding that "Defendants testified that they provided, in writing, a forwarding address. Consequently, Defendants are entitled to the return of their security deposit, plus [statutory] damages." *Compare* Appellant's Brief at 9-10 *with* January 7, 2019 Decision and Entry at 3.

{¶ 9}   Although he does not cast it in exactly these terms, Mr. Clarke appears to be arguing that the trial court lacked sufficient evidence on which to find that Ms. Royal had met her counterclaim burden of proof. *See* Appellant's Brief at 10 ("Appellees failed to provide such proof. Accordingly, the trial court erred when granting repayment of the security deposit" with doubled damages). At most, he contends, Ms. Royal adduced evidence that she had provided her forwarding address not "*in writing*" but only "verbally." *Id.* at 9 (emphasis in original).

{¶ 10} " 'When a [party] argues that the judgment in a civil case is supported by insufficient evidence, [a court of appeals] must determine whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable trier of fact could find in favor of the plaintiff.' " *Timoneri* at ¶ 37, summarizing favorably-cited *Lubanovich v. McGlocklin*, 9th Dist. No. 15AP-618, 2014-Ohio-2459, ¶ 8. "In essence, a court's review of the sufficiency of the evidence tests the evidence's adequacy." *Id.*, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11.

{¶ 11} The trial court heard sworn testimony from Kate Royal that she had given Mr. Clarke notice of her new address. November 8, 2018 Tr. at 48. Asked "[h]ow did you give him that notice?," Kate Royal responded: "When we were in court handing him over the keys on our first court date, May the 30th." *Id.* (Our review of the trial court record suggests that the case was continued on May 24, 2017 until June 6, 2017, but suggests further that the parties entered into their Agreed Entry on that latter date confirming that possession of the property passed immediately to Mr. Clarke.) That testimony was not disputed, and Mr. Clarke did not cross-examine Kate Royal on the details.

{¶ 12} The record does not substantiate Mr. Clarke's argument to us that this testimony indicated that Ms. Royal's address notification was given orally rather than in writing. *Compare* Appellant's Brief at 9 ("it appears from Appellee's testimony, she provided her forwarding address [if she even provided it] verbally * * *"): Ms. Royal did not aver that she had given the notice "verbally." And as we will explain, we need not assess whether the trial court's view that the notification was in writing was a justifiable conclusion from the testimony the trial court saw first-hand. Nor need we evaluate here whether the tenant's "substantial compliance" with the statute's notice provision suffices where (as Mr. Clarke's own gloss on the testimony would support) the landlord has "actual knowledge" of a workable address. *Compare, e.g., Smitson v. Zeches*, 10th Dist. No. 92AP-1773, 1993 Ohio App. Lexis 4036, *6 (Aug. 17, 1993) ("We view the statute as one permitting substantial compliance as a predicate to its feature permitting double damages"; tenant need not personally deliver forwarding address where landlord has "actual knowledge" of it).

{¶ 13} After all, by May 24, 2017 (the same month that Mr. Clarke terminated the lease, *see* January 7, 2019 Decision and Entry at 3, and two weeks *before* the "delivery of

possession" back to him, *compare* R.C. 5321.16(B) *with* June 6, 2017 Agreed Entry), Ms. Royal's counsel had filed with the trial court and served on Mr. Clarke *written* Notice of Appearance of Counsel complete with his mailing address (as followed on June 6, 2017 by Ms. Royal's initial Answer and Defenses, again listing her counsel's address). Ohio courts have held that under such circumstances, that writing satisfies the notice of address prerequisite to recouping a security deposit and other damages. *See Jensen v. Blvd. Invest. Ltd.*, 8th Dist. No. 103658, 2016-Ohio-5325, ¶ 23 ("Tenant was represented by counsel in the pending * * * case when Tenant vacated the premises * * * * Thus, Landlord had a reasonable avenue to contact Tenant to return his security deposit"); *Wehrley v. Sunchase Am., Ltd.*, 12th Dist. No. CA99-11-191, 2001 Ohio App.Lexis 256, *13 (Jan. 29, 2001) ("appellant had a reasonable basis to believe that appellees could be contacted through their attorney," so notice of address prerequisite was satisfied).

{¶ 14} We do not agree with Mr. Clarke's bottom line that the trial court lacked sufficient evidence on which to conclude that Ms. Royal was entitled to the return of her security deposit and other damages under the terms of R.C. 5321.16. And while Mr. Clarke's counsel suggested at oral argument what we understand to be a manifest-weight-of-the-evidence contention that it would have been "very odd" (and therefore unlikely) for Ms. Royal to have known a forwarding address so shortly after having her lease terminated, we would not have accepted that argument even had it been advanced earlier: Ms. Royal's testimony was undisputed; the trial court was well positioned to evaluate it; and in any event, the record reflects that Mr. Clarke had the address of Ms. Royal's lawyer in the matter. *Compare Timoneri* at ¶ 43 ("Appellate courts review challenges to the credibility of the evidence under the manifest-weight-of-the-evidence standard * * * * In considering whether a judgment is against the manifest weight of the evidence, appellate courts must give deference to the trial court's factual findings because 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony' ") (citation omitted).

{¶ 15} We overrule Mr. Clarke's first assignment of error.

{¶ 16} Mr. Clarke's second assignment of error boils down to a contention that the trial court abused its discretion in awarding Ms. Royal $5,415 in attorney fees because the reasonableness of those fees was not established. *See* Appellant's Brief at 10-14.

{¶ 17} "The amount of an attorney fee award is a matter within the trial court's sound discretion." *Timoneri*, 2016-Ohio-5901, at ¶ 51, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). "An appellate court will not reverse a determination of attorney fees unless the appellant demonstrates an abuse of discretion [so] that ' "the amount of fees determined is so high or so low as to shock the conscience." ' " *Id.*, quoting *Bittner*, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985); *see also Wehrley* at *14 (reciting standard).

{¶ 18} The Supreme Court of Ohio has emphasized that, pursuant to R.C. 5321.16(B) and (C), when a landlord wrongfully withholds a security deposit, his liability for reasonable attorney fees as well as for double the amount wrongfully withheld is "mandatory." *Padgett*, 32 Ohio St.3d at paragraph three of the syllabus; *see also id.* at 349 ("If the trial court finds that a landlord has wrongfully withheld a portion of the tenant's security deposit, it shall determine the amount of reasonable attorney fees to be awarded on the basis of the evidence presented"). The fee award "must relate solely to the fees attributable to the tenant's security deposit claim under R.C. 5321.16, and not to any additional claims." *Id.* at 349; *see also* paragraph four of the syllabus. But while "the tenant may not use R.C. 5321.16(C) to recover attorney fees attributable to * * * additional claims" brought by the tenant, *id.* at 349, "[t]his court and others have determined that a tenant may recover reasonable attorney fees under R.C. 5321.16(C) attributable to both the security deposit claim and to defending against a landlord's claim for alleged damages when the two claims are virtually indivisible." *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 56, citing *Cook v. Downey*, 10th Dist. No. 87AP-1075, 1988 Ohio App.Lexis 2636 (June 30, 1988) (fees awarded for both advancing wrongful withholding claim and in defending against landlord's property damage claim) (further citations omitted).

{¶ 19} Here, Ms. Royal's claim that Mr. Clarke wrongfully withheld the one-month security deposit overlapped virtually entirely with her defense against Mr. Clarke's position that she, not he, was responsible for terminating the lease and that she therefore was liable to him for rent through September. Had Mr. Clarke prevailed on that claim, Ms. Royal could not have prevailed on hers. *Compare Whitestone Co.* at ¶ 56, quoting *Nelson v. Tipton*, 10th Dist. No. 99AP-277, 1999 Ohio App.Lexis 5427, *23 (Nov. 18, 1999) (" 'The resulting disputes, even if in the form of two separate claims[,] become virtually indivisible

from each other. In such a case, the trial court would not abuse its discretion in granting all of the tenant's reasonable attorneys fees because the claims themselves essentially involve the same subject matter—the security deposit' "), ¶ 57 (citation omitted) ("[D]efendant's security deposit counterclaim was totally dependent upon defending against plaintiff's claim. As a result, the fees incurred to defend against plaintiff's claim were essential to the recovery of defendant's security deposit. Accordingly, we find the claims set forth by plaintiff and defendant to be virtually indivisible from one another; accordingly, defendant was entitled to an award of reasonable attorney fees attributable to both her security deposit claim and to defending plaintiff's damages claim").

{¶ 20} After devoting a full hearing to the fees matter and considering additional submissions, the trial court conducted a careful review of Ms. Royal's claimed attorney fees. *See* June 26, 2020 Judgment Entry. The materials before the trial court included the "Oath/Affidavit" of Ms. Royal's lawyer attesting to his $150 per hour fee agreement, his work invoice (detailed to the one-tenth of an hour), his three years' of landlord/tenant practice, and his professional opinion that "[t]he rate, time, skill involved, experience of the attorney[,] and the total expense [invoiced] is a reasonable and fair reflection of the case subject matter." March 13, 2020 Oath/Affidavit at ¶ 2, 3, 9, and Invoice 00091-Royal.

{¶ 21} The trial court did not award the full $6,160 in fees that Ms. Royal sought. *Compare* Oath/Affidavit at ¶ 10 and Invoice *with* June 26, 2020 Judgment Entry at 4. Parsing the invoice, Judge Thomas excluded 4.9 hours "for having been unreasonably and unnecessarily expended." June 26, 2020 Judgment Entry at 2-3 (excluding 9 entries totaling $735). The trial court therefore pared the fee request by almost 12 percent, eventually awarding $5,415 in fees. *Id.* at 3, 4.

{¶ 22} The trial court arrived at that figure by following the instruction of *Bittner* to start with " 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Compare* June 26, 2020 Judgment Entry at 2-3 (calculating "lodestar") *with* 58 Ohio St.3d at 145, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The trial court then further complied with *Bittner* by reviewing the approved lodestar in light of the factors specified in Prof.Cond.R. 1.5(a)(1) through (8) to determine whether any modification of that figure was appropriate. *Compare* June 26, 2020 Judgment Entry at 3 *with* 58 Ohio St.3d at 145-46; *compare also Timoneri*, 2016-Ohio-

5901 at ¶ 52 ("The trial court has the discretion to determine which factors to apply and in what manner the factors will affect the amount of fees awarded[,]" citing *Bittner* at 146). Noting that Ms. Royal's submission had evaluated several of these factors while Mr. Clarke "did not submit any argument regarding application of the factors," the trial court found after its review that "no modification to the lodestar figure is appropriate." June 26, 2020 Judgment Entry at 3.

{¶ 23} Mr. Clarke does not identify for us any particular billing entry with which he takes issue, or any potential modification factor that he thinks should reduce the fees or hourly rate billed. He does not evaluate any specifics in the billing records or Oath/Affirmation at all. Rather, he cites a decision from the Third District Court of Appeals that affirmed a trial court's no-fee determination as *not an abuse of discretion, see* Appellant's Brief at 10-12 invoking *Inverness Gardens, LLC v. Maher*, 3d Dist. No. 5-15-16, 2015-Ohio-3816, and takes issue with the trial court's citation to this court's observation in *Sims v. Nissan N. Am., Inc.*, 10th Dist. No. 15AP-19, 2015-Ohio-5367, ¶ 22, that "an affidavit providing a recapitulation of fees is sufficient to support the motion" for attorney fees, *see* Appellant's Brief at 13-14, citing June 26, 2020 Judgment Entry at 1-2. But the trial court does indeed exercise its sound discretion as to fees, and here as in *Bittner*, "[t]he trial court judge was in the best position to assess and review the time records submitted by [the prevailing claimant's] attorney[]. The trial judge had been involved in the * * * proceedings and was aware of the posture of both" parties. 58 Ohio St.3d at 146. Moreover, Mr. Clarke provides no real explanation for his apparent rationale that a trial court in this statutory context somehow cannot award attorney fees based on the court's own informed evaluation of a party's evidence of her lawyer's rate and hours if "reasonableness" is generically contested. *Compare* Appellant's Brief at 13-14 (attempting to distinguish *Sims*).

{¶ 24} The trial court carefully considered what hours were appropriately counted and what hours were not. Further, the trial court explicitly found that "the rate charged by Defense counsel is reasonable and consistent with the fee customarily charged in Franklin County for a security deposit case." June 26, 2020 Judgment Entry at 3. The same trial court previously had evaluated the parties' conduct and decided the merits of the case, *see* January 7, 2019 Decision and Entry, and therefore was especially well positioned to assess the counterclaim results obtained, *see* June 26, 2020 Judgment Entry at 3-4.

{¶ 25} Quite properly with a fee award amounting to just over two and a half times the quantum of damages achieved, the trial court did consider whether the revised lodestar was improperly disproportionate to the damages recovered. June 26, 2020 Judgment Entry at 4 (concluding that in this context, disproportion did not make the particular award unreasonable); *compare Timoneri* at ¶ 55 ("An explanation of the trial court's [fee award] reasoning is particularly important where the amount recovered is small compared to the attorney fees assessed") (citations omitted). In this assessment, context matters, for under the remedial Act relevant here, as under the Act triggered in *Bittner*, "[p]rivate attorneys may be unwilling to accept consumer protection cases if the dollar amount they are permitted to bill their adversary is limited by the dollar amount of the recovery." 58 Ohio St.3d at 465; *see also Timoneri* at ¶ 56-57 (agreeing with trial court there that " '[t]his case presents a classic example of why the Landlord-Tenant Act included a provision for attorney fees"), ¶ 58 (finding award of $10,505 in attorney fees not an abuse of discretion in context of particular facts under which landlord's actions "forced [tenant] to incur [that amount] in order to enforce her statutory rights" to claim $695 in statutory damages). Were the amount of recovery significantly greater, one might expect the fee to be commensurately less disproportionate; security deposits of one-month's rent, however, typically and even when doubled do not buy all that much in the way of lawyer time. Mr. Clarke does not make any specific disproportionality argument in any event.

{¶ 26} To the extent that Mr. Clarke does mean to argue, however indirectly, that Ms. Royal needed to present independent expert testimony on the reasonableness of rates or hours in order to recover her fee award pursuant to the Landlord-Tenant Act, we disagree under the circumstances presented by this case. Ms. Royal's lawyer, of course, provided his own opinion. Oath/Affidavit at ¶ 9. And the trial court is well positioned to assess fee issues in the context of Franklin County security deposit cases. *Compare, e.g., Long v. Long*, 10th Dist. No. 11AP-510, 2012-Ohio-6254, ¶ 20 (domestic relations context: "Given the trial court's * * * familiarity with the progress of the matter before it and its inherently superior position to observe the relative conduct of the parties and counsel, the trial court was in a good position to assess the effectiveness of counsel and the reasonableness of fees"). As an aside, we note that our view on whether there is need for expert testimony on reasonableness here is not undermined by Mr. Clarke's testimony that he paid *more* in legal

fees ($6,104.56) than the $5,415 in fees awarded to Ms. Royal, even though those payments that Mr. Clarke himself sought to recover covered less of the litigation because they did not include work at trial or on his premature appeal (and of course they were incurred in a losing effort on the merits). November 8, 2018 Tr. at 18.

{¶ 27} This court recently analyzed whether expert testimony on reasonableness was required to make out a claim for attorney fees in a legal malpractice context. *See McGraw v. Jarvis*, 10th Dist. No. 19AP-538, 2021-Ohio-522, ¶ 33-42. We observed there that trial courts frequently are called upon to determine a "reasonable" award of attorney fees. *Id.* at ¶ 38. "Parties may, and often do, support their requests for attorney fees with expert testimony," we noted. *Id.* But, we held, whether itemized fees "were reasonable and necessary, and thus part of those damages that would make [the plaintiff-appellants] whole, are questions for the trier of fact." *Id.* at ¶ 40 (citations omitted). "[T]he trial court erred in concluding that expert testimony was required to demonstrate the reasonableness and necessity of attorney fees * * * ." *Id.* at ¶ 41 (concluding that trial court therefore erred in directing a defense verdict on that score). Allowing that the ruling was case-specific and that (as here) we were not determining in what circumstances expert testimony on fees might be required, we cited a variety of other contexts in which we have held that expert testimony is not required in order to support an attorney fee claim. *Id.* at ¶ 41.

{¶ 28} Those cases included, for example: *In re Estate of Klie*, 10th Dist. No. 16AP-77, 2017-Ohio-487 (noting at ¶ 22 that "this court has previously held that although the better practice may be to introduce expert testimony regarding the reasonableness of fees, a probate court judge is qualified to make a determination of the reasonable attorney fees to be paid from an estate without the necessity of expert testimony, based on evidence of the fees incurred"); *Long*, 2012-Ohio-6254 (holding at ¶ 20, in the domestic relations context with citations omitted, that a "trial court * * * is not required to hear such [expert] testimony and may rely on its own knowledge and experience to determine the reasonableness of the amount [of attorney fees] claimed"); and *Yoder v. Hurst*, 10th Dist. No. 07AP-121, 2007-Ohio-4861 (landlord-commercial tenant contract dispute; holding at ¶ 24-25 that hourly rate was reasonable on its face for relevant context, and pointing out that "[i]ronically," if prevailing party had been "required to present an additional witness to give independent expert testimony as to attorneys' fees," the losing party ultimately

would have incurred those additional fees); *see also* ¶ 36, Sadler, J., concurring separately ("Ohio appellate courts have lately recognized trial courts' expertise in appraising the reasonable value of attorneys' services rendered in the course of litigation conducted before them") (citations omitted).

**{¶ 29}** This case involving a statutory attorney fee award in the context of this wrongfully withheld security deposit and on the trial court's other determinations fits comfortably into that list of earlier decisions. The trial court did not need (and Ms. Royal did not need to pay, in the first instance) an outside expert to assess the $150 per hour fee and the itemized work done before the trial court with the resulting (court-modified) lodestar of $5,415.

**{¶ 30}** In sum, we conclude, as in *Timoneri*, that "the trial court applied the appropriate method for determining reasonable attorney fees, and * * * provided adequate reasoning for its attorney fee award." 2016-Ohio-5901 at ¶ 61. Because the trial court did not abuse its discretion in making that award, we overrule Mr. Clarke's second assignment of error.

**{¶ 31}** Having overruled both assignments of error, we affirm the judgments of the Franklin County Municipal Court. Ms. Royal's counsel did not participate in the briefing or argument of this appeal, and we are not asked to consider any further fee award.

*Judgment affirmed.*

DORRIAN, P.J. and MENTEL, J., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____